Thank you. Please call the next case. Our next case is 5-1406-1886, General Dynamics v. E&V, James Keith Jr. for Retail and Mary Massam for the Acquisition. Counsel, you may proceed. Thank you. May it please the Court? Ms. Massam, my name is Jim Keith and I represent General Dynamics. We believe the original Commission decision and opinion on review got this correct when they denied the case on accident. The Commission originally found that Ms. Wade was not at a risk greater than the general public when she tripped on her shoestring and fell injuring her low back. As this Court is well aware, there's three types of risk an employee can be exposed here. I don't believe the employment risk applies because there's nothing about the work or footwear suggested in any way that that contributed to the accident. Walking is a neutral risk. We can agree on that, correct? Correct. Giving the other side to do the argument is that what about the argument she's forced to work at a pace much faster than any member of the public and she does this trip back and forth more than the general public would ever do it. What do you make of the counterargument? First of all, I believe the Commission specifically found that there was not sufficient evidence in the record to support that she was forced to work at such a pace that would increase the risk of falling or stepping on her shoelace. What the Commission relied on in making that determination, at least in part, was the admission that there was actually no specific quota. Now Petitioner or Ms. Wade and her witness testified it was an understanding but also acknowledged they'd never been disciplined. No one ever forced them, so to speak, to meet this quota, so to speak. I mean, that could be the only argument, right? I believe so. They had the Circuit Court on the tab, didn't they? Something about the pace. They did. I believe the Circuit Court, what they did was they drew inferences, which would obviously have been drawn, but the Commission rejected those inferences and that's the Commission's job. And I think really the most important part of this is really the lack of evidence proffered by Petitioner. Not one time did Petitioner ever testify that the speed of the work, or looking at the bullets while she's walking, caused her to trip on the shoestring. She never said that. She never said that. Now she did say, I had to do this so many times, she did say I was looking at the bullet when I did, but she never said that's the reason. If that was the reason, why didn't she just say it? And for that reason, the Commission and that alone would be enough for them to reject the inference that was drawn by the Circuit Court. Was there any evidence in the record that her shoelace was untied? I don't believe, Justice Stewart, whether she actually testified it was untied. I believe she testified she tripped on her shoestring, which was the finding by the Commission. Because the Circuit Court specifically said tripping on an untied shoelace, and I was thinking there was some talk in the briefs about whether there really was any evidence about whether it was untied. That is correct, and I believe maybe what Judge Blyer did was he may have assumed that it was untied, because how else do you trip on a shoelace unless it is untied? Because she sold very easily. Now you see people with really long shoelaces. New Balance shoes, they have one standard shoe. If you have a small shoe, it's the same length as if you have a size 16. It's modern footwear. Exactly, and I believe that the Circuit Court, Judge Blyer, did overstep its bounds by reaching that conclusion, because the Commission clearly stated trip on a shoestring. It didn't say anything about being untied, and that, of course, is within the province of the Industrial Commission. The Commission said she stepped on her shoelace, which was the Commission's language. Although the Commission finds the petition to be credible, we agree with the outcome of the case as decided by the arbitrator. It's undisputed that the accident was precipitated by the petitioner stepping on her shoelace, causing a torquing injury to her back. She stepped on the thing. I don't know if it was tied or untied, but she stepped on it. Regardless, and we agree with that factual finding made by the Commission, and the point is there was not sufficient evidence put forward by Ms. Wade that anything about her work contributed to her stepping on that shoelace. Would you be here if General Leibovitz said that you must wear lace shoes? In that situation, mandatory footwear, if there is – there could be an inference drawn, I would agree, that if you were forced to wear a certain type of shoe and that contributed to the accident, that that could be argued as an increased risk. I agree that inference could be drawn, but I don't believe that was present in this case. And so, if you don't have any further questions, we just believe that there was not sufficient evidence proffered, and that's why the Commission denied this case on accident. Thank you, Counsel. May it please the Court. Mary Massafar, the appellee in this case, Annie Wade. We are, of course, defending Judge Bleier's reversal of the Commission in the first decision. No, we're examining the Commission's first decision. That's what we're examining, not his reversal. Yes, you're right. That's right. And I'm here to defend the fact that it was reversed and set aside by Judge Bleier. There was no evidence that Annie Wade knew her shoestring was untied. Is there any evidence that we know it was untied? Well, she was asked specifically in cross-examination, okay, you explained to them what happened was that your shoelaces were untied, and as you were walking, you stepped on your shoelaces, and that's what caused you to trip and twist. You tripped and jerked and injured your back. And she said, as I was pivoting to leave, yes. If you look at what her testimony was, she had just removed two of the projectiles that had been reverse torqued. And she testified that it is her job, it is one of the essential functions of her job, as a matter of fact, to inspect those projectiles for defects. Well, let's go back to the original question. We have a leading question, apparently. But do we have any testimony from her that her shoelace was untied? I think she inferred after the fact, yes, her shoestrings were untied, just based on the fact that she says, as I was pivoting to leave, I stepped on the shoelace and twisted my back. But we don't have her saying it was untied. No, it was in response to a leading question by an opposing counsel. That introduced the fact, not an evidence. Well, I think if you're looking at the Commission's decision here, and their decision was that there wasn't enough evidence that the employee was forced to work at a pace that would make her susceptible to stepping on her shoelace or not. So whether or not this shoelace was totally untied, or whether it was just long, because it hadn't been looped long enough when she laced them that morning. Looped too long. There's really no dispute that that was the cause, the mechanism of injury. You can see, though, you do have something more than an employee stepping on a shoelace or shoestrings to recover. It's a neutral risk, correct? I would agree, and I think the Commission found it to be a neutral risk, and that's why they looked at whether she was placed at a greater risk. What was the something more? The something more, which I do not believe the Commission looked at, and I think Judge Bleier did note that, was the fact that her main job was to look for defects. And she testified that as she moved between the two bays to do this reverse torquing procedure, she had to be inspecting those projectiles for defects, both before they were put in the machine and after they were taken out of the machine. Did she ever testify she was distracted by that, or that somehow contributed to her fall? And I think if you put, if you look at. . . Did she ever testify that she was distracted? No, but I did test, I did note two cases in my brief, the Knox case and the Nabisco-Browns case. In both of them, there was evidence that there was distraction. That they had, they held in their hands objects. And the Commission drew the inference they were distracted. In this case, the Commission did not draw the inference. The Commission didn't even make mention of the fact that holding the projectiles at all. What the Commission said was there was simply not sufficient evidence that the claimant was forced to work at a pace that would make her particularly susceptible to stepping on her shoelace. They said it was a failure of proof. This is a failure of proof case. And my point, Your Honor, is that I believe that that decision is against the manifest way of the evidence because the Commission did not look at the evidence that this lady was required to inspect projectiles as she moved from shoe to face. What did she say? What did she testify to? I was distracted, I was looking at projectiles, and I didn't know where my feet were. Did she say that? She did not say that. But in the Knox case and in the Nabisco-Brands case, neither of them said, I couldn't see where I was going, I didn't see that there was a defect on the steps because I was holding these. They didn't say anything whatsoever. So I don't think it's fatal in my client's case to say, I didn't see my untied shoelace because I had to be looking at the canvas. That's all she had to do was say it. That's all she had to do was say it. If your theory was distraction, don't you think she should have been asked whether there was a distraction? And she testified that at the very time that she tripped on her shoelace, she was looking at those projectiles before she actually put them in the boxes, which was the last step, putting them in the reject box. The question is, all you have to do is ask her the question, were you distracted by what you were doing? And then it would fall in the Nabisco. But nobody asked her the question, and the commission can draw inferences or they cannot draw inferences, that's their business. We don't draw the inferences for them. But I don't know how you can ignore an inference that turns upon what the essential job function that this lady had, and that is inspecting projectiles. But whose job is it to draw the inference? We can't substitute our inferences for that of the commission, can we? Well, we can say that the decision was against the manifest weight of the evidence because they didn't consider that. Well, who said they didn't consider it? They just didn't draw the inference. They heard all the evidence. The evidence is there. Now, the question that I have for you is, because I am inspecting something that's coming off of an assembly line, does that necessarily mean I'm not looking at my feet? Well, I can tell you this. If I'm walking down the street in a pair of tennis shoes or boots like this lady, and I'm not holding anything, and I'm not walking at a very fast pace because I have to get somewhere quickly, I'm sure as heck going to be able to see that that shoe string is dangerous and needs to be re-tied much more easily than if I was in a hurry to catch a bus or if I was carrying something in my hands and had to be looking at it, looking at a cell phone or whatnot. Why isn't it just as reasonable for the commission to infer that her examination or inspection process was occurring while she was at the point where she took the projectiles off the press or whatever the machine was, as opposed to inspecting while she was walking? Why is it more reasonable to infer that she was doing the inspection while she was walking? Because she testified several times that she had to look at the projectiles, both as she grabbed them out of the box initially to look for defects, then as she placed them into the machine, goes back to the first bay, pulls the lever that torques the projectiles. She then takes two new projectiles, looks at them while she's walking over to the bay, gets the torqued projectiles out, looks at them, and testified specifically. Right after she took those recently torqued projectiles out, she turned to go towards the box where they were going to be placed, and it was then that she tripped on her shoestring. And this is a process that she would do hundreds of times a day. Both she and Ms. Cease, I can't remember the other worker's name, both testified that the employer had a quota system and that it was very fast-paced, and that this DVD, which was the only other evidence in record about the job itself. Nobody from the employer testified, right? No one testified. Nobody provided any of her testimony about the process. Correct, and if you look at that video, and Judge Blier did look at that video, he noticed, you will note that the person that they were filming was not a member of the crew. The person was simulating the process of walking between the bays and holding the projectiles. Judge Blier became the fact finder. That's exactly what he did. He became the fact finder. The commission looked at all of this, and the commission came to the determination that there was insufficient evidence in the record that the pace that she was forced to work made her particularly susceptible to stepping on the shoelace. They looked at the same video he looked at. They looked at the same evidence that he looked at. He just decided to do it different than they did. Second of all, you candidly admit in your brief that she never testified that she was distracted at the time that she tripped on her shoelace, or that she was even looking at the projectiles. I did testify. Excuse me. I did put in my brief that my client testified that at the time she turned to, after she had taken the torqued projectiles out, it was at that time, after she removed them, she was looking at them at the time she was pivoting, and when she turned. I think what you candidly admitted in your brief is she never testified that she fell because she was looking at the projectiles. Well, and, okay, that may be true. Did she have to testify to that? Did she have to testify that she fell? I don't believe so, Your Honor. I don't believe so. The claimants in the Knox case and the Nabisco case were never asked that question, never made that testimony that they were distracted. I don't remember in either of those two cases, I mean, did the appellate court reverse the commission? I don't remember whether they were affirming what the commission already did. The commission drew the inference that they were distracted in the Nabisco. That was the commission's inference. They drew the inference. And to your point, Your Honor, this court, as well as the circuit court, has the right to examine the evidence and make a determination as to whether that evidence is contrary to the manifest weight. This court and the circuit court are not bound to rubber stamp a commission's decision that is not supported by the manifest weight of the evidence. What is not supported here by the manifest weight of the evidence? That DVD did not show the actual pace that the crew members were performing in that job. And Judge Blier recognized that. Did the commission say we base our decision on that DVD? No, but that's the only evidence in there about the pace not being fast. Both my client and the other worker testified that that lady was walking about one-third of the speed that they had to walk in order to do that job. So is the logic here, if I'm trying to explain it to the man on the street, that if you're working in a factory and you are walking X number of steps, you're at a risk greater than the general public of tripping on your shoelaces? In this particular case, the pace of that job, I think, increases the risk. The pace is walking both with rapidity and frequency. Yes, you will see on that tape, and I did note that one thing on that DVD was accurate, and that is that there was no downtime. They didn't sit and have to wait for the process of this torquing to go through like a five- or ten-minute course. It was just operate the lever and then go immediately back. There was no downtime. So we're back to this idea, if I'm writing a book on this thing, is that it's a neutral risk, right? I would agree that it was a neutral risk, and I think the commission has so found. Which is just something the general public does, right? Walking and perhaps having an untied shoelace are risks that the general public has. And that anyone who's in a job where they have to walk greater than the general public is exposed to a risk of tripping on their own feet or stepping on their shoelaces to a greater degree than the general public. If their job requires them to do a lot of walking, I would agree. And we're supposed to come up with this because there's never any evidence by any attorneys as to pedometer readings. There's no standard there. What is the general public walk every day? How many steps? I mean, I've never seen a creative argument yet by attorneys. Which can be done very simply, by the way. When you look at pedometer studies, when they tell you what is fitness, okay, et cetera, how many steps you should be walking, there's all of that in how many steps the general public walks. I've never seen that in the evidence. Why isn't it there? Because so in the absence of the case being made, do we not defer to the expertise of the commission as to what the general public's exposed to and whether that is greater than, in the case for the claimant, greater than that of the general public? Well, I think the commission got it wrong because the weight of the evidence. Is Judge Brad Blier smarter than they are on this? I mean, does he have a better litmus? Has he read the studies or something? I don't know. Well, Judge Blier did mention the evidence in support of a finding contrary to what the commission thought. The case was faster. When you're talking about manifest weight, there is no right answer. The commission could go either way. The question is, when do we have the right or when does the judge have the right to say it should have gone the other way? When it's against the manifest weight. What does that mean? That means you look at the evidence on one side and you look at the evidence on the other side. Do what you did in your brief and I'll read it to you. While the employee in the instant case never testified that she fell because she was looking at the projectiles and not at her shoes, this court should note that in neither of the above-referenced cases did the claimants testify that the reason they fell was because they had to hold onto items as they were going down the stairs. But in both of those cases, the commission chose to draw the inference. In this case, the commission did not choose to draw the inference. But the commission didn't even draw an inference. They didn't make mention of the fact that holding the projectiles did or didn't have any impact. Well, I suppose that because no one testified that it did. I mean, do they have to eliminate all conceivable possibilities in an opinion to satisfy people? Well, I think it's important that we look at what the essential functions are of a person's job. And if those essential functions impact an injury, then I think you are making a case, you are making a claim that the claimant faced a risk greater than the general public. Sometimes the light's your friend. Your time is up, but you'll have time in reply. No, no. That's fine. That's fine. I got distracted. So did we. So did we all. On that note. Oh, wait a minute. You don't have time. Excuse me. That's right. I have nothing to offer unless you have questions. No. Unless you want to concede your time. No. No. Hold. Hold. To the others. But they do in Congress, you know. Okay. Well, thank you, counsel, both for your arguments in this matter. It will be taken under advisement and written disposition shall issue.